**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| | : | **NO. 15-1718** |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**STENGEL, J.**                                              **February 3, 2016**

        *Pro se* plaintiff, Charles Talbert, brings a § 1983, § 1985 and § 1986 action against

the City of Philadelphia, District Attorney Seth Williams, Assistant District Attorney

Tami Levin and Assistant District Attorney Adam Jackson.[1]  Mr. Talbert claims that he

has a right to entrance into the witness protection program and that by denying him that

right the defendants have violated § 1983, § 1985 and § 1986.  Both the City of

Philadelphia and the DA Defendants have filed a motion to dismiss.  For the reasons

discussed below, I will grant the City of Philadelphia and the DA Defendant's motion to

dismiss.

---

[1] I will collectively refer to District Attorney Seth Williams, Assistant District Attorney Tami Levin and Assistant District Attorney Adam Jackson as "DA Defendants."

## I.      BACKGROUND

Mr. Talbert is an incarcerated individual who is currently detained at Philadelphia Industrial Correctional Center.  (Doc. No. 18[2] at ¶ 3).  On August 7, 2015, Mr. Talbert filed an amended complaint against the City of Philadelphia, Seth Williams, Tami Levin and Adam Jackson.[3]  (Id.).  According to Mr. Talbert's amended complaint, in 2000 or early 2001, Mr. Talbert testified against Mr. Christopher Edge and Mr. Sergio Hyland in a homicide prosecution brought by the DA's Office.  (Id. at ¶¶ 8, 9).  Subsequently, Mr. Talbert was placed into the DA's Office's witness-protection program by then victim-witness coordinator, Lelan Kent.  (Id. at ¶ 10).  On February 4, 2011, Mr. Talbert was shot multiple times by Johnnie Simmons in retaliation for the testimony that Mr. Talbert had provided against Mr. Edge and Mr. Hyland.  (Id. at ¶ 11).  Even after being shot, Mr. Talbert was assaulted several times in retaliation for his testimony against Mr. Edge, Mr. Hyland and Mr. Simmons.  (Id. at ¶ 12).

Mr. Talbert alleges that detectives from the Philadelphia Northwest Detective Division filed documents with the Victim Witness Coordinator and Victim Services Director at the DA's Office requesting that Mr. Talbert be relocated for his protection. (Id. at ¶ 14).  Mr. Talbert wrote to the District Attorney and spoke to the District Attorney in person regarding his request for relocation.  (Id. at ¶ 15).  In response, the District

---

[2] Plaintiff's Amended Complaint.
[3] Mr. Talbert filed his original complaint on June 4, 2015.  Mr. Talbert's amended complaint includes all of the same allegations as his original claim except Mr. Talbert includes a paragraph in his amended complaint stating: "The City' conduct and failure to establish or maintain a policy, practice or custom of monitoring, supervising and training the office, including defendants r. Seth Williams, Adam Jackson and Tami Levin contributed to and approximately caused the violation of plaintiffs rights under state and federal constitutions and laws of the commonwealth of Pennsylvania and United States."  Pl.'s Am. Compl. ¶ 22.

Attorney provided Mr. Talbert with the name of the Victim Services Director. (Id.)

Additionally, Mr. Talbert spoke with the Federal Bureau of Investigation. (Id. at ¶ 17).

Despite his many requests for relocation, Mr. Talbert has yet to be relocated. Mr.

Talbert states that he suffers "physical and mental injuries. . . severe mental anguish,

stress, extreme anxiety, migraine headaches, substantial lack of sleep and post traumatic

stress," as a result of not being relocated. (Id. at ¶ 20). Mr. Talbert now seeks

compensatory and punitive damages in addition to injunctive relief.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim upon which relief can be granted examines the legal

sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following

the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal

actions have shifted from simple notice pleading to a more heightened form of pleading,

requiring a plaintiff to allege facts sufficient to show that the plaintiff has a plausible

claim for relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

While Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.

8(a)(2), in order to "give the defendant fair notice of what the . . .claim is and the grounds

upon which it rests," Bell Atlantic, 550 U.S. 544, the plaintiff must provide "more than

labels and conclusions." Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 649 (E.D. Pa.

2010)(citing <u>Bell Atlantic</u>, 550 U.S. 544).  A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. However, a *pro se* complaint must be liberally construed and held to a less stringent standard than formal pleadings.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976).  A *pro se* action "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Jubilee v. Horn</u>, 959 F.Supp. 276, 279 (E.D. Pa. 1997)(quoting <u>Estelle</u>, 429 U.S. at 107).

## III.    DISCUSSION

### A.    <u>Section 1983 Claim</u>

Mr. Talbert brings this action against the defendants pursuant to 42 U.S.C. § 1983. Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his or her constitutional rights.  The relevant text of § 1983 provides, in part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . ."

Section 1983 does not by itself confer substantive rights, but rather, provides a remedy for redress when a constitutionally protected right has been violated.  <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985)(citing <u>Baker v. McCollan</u>, 443 U.S. 137, 140,

144 n.3 (1979)).  Thus, in order to bring a successful claim for relief under § 1983, "a plaintiff must demonstrate the defendant, acting under color of law, deprived him or her of a right secured by the Constitution or the laws of the United States."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

Municipal liability under 42 U.S.C. § 1983 cannot be based on the "*respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights."  Patterson v. City of Phila., No. 08-2140, 2009 WL 1259968, at *9 (E.D. Pa. May 1, 2009).  Municipal liability will only attach under § 1983 when "the execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978).  A plaintiff can establish municipal liability under § 1983 by pointing to either a policy or custom that has harmed them.  Stewart v. Moll, 717 F.Supp.2d 454, 465 (E.D. Pa. 2010)("The plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that cause the violation.")(citations omitted).  The plaintiff can show that a policy existed "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)(citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)).   The plaintiff may establish custom "by showing that a given course of conduct although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually as to constitute law."   Id.  When

arguing either custom or policy was the source of the plaintiff's injury, the plaintiff must show "that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Id.

### 1.    DA Defendants

There is no affirmative right to governmental protection under the Due Process Clause of the Fourteenth Amendment. DeShaney v. Winnebago County Dep't of Soc. Services, 489 U.S. 189, 195 (1989). In other words, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. Two exceptions exist to this rule. Under the special relationship exception, the Constitution does "impose[] upon the State affirmative duties of care and protection with respect to particular individuals . . .when a special relationship has been established because 'the State takes a person into its custody and hold him there against his will." Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013)(citing Deshaney, 489 U.S. at 198-200). For example, courts have imposed liability on prison officials where "a prisoner faces an objectively serious risk of harm and the prison official acts with deliberate indifference towards the inmate's safety." Laughlin v. Peck, No. 10-213, 2011 WL 6000596, *4 (W.D. Pa. Nov. 30 2011)(citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). However, courts have limited the special relationship exception to those "state actors who are responsible for the institutionalization of the plaintiff and the selection of the plaintiff's housing." Id.; see D.N. ex rel. Nelson v. Snyder, 608 F.Supp.2d 615, 622-23 (M.D. Pa. 2009)("The special

relationship theory places a burden upon state actors who maintain physical custody over a plaintiff."); Delrosario v. City of New York, No. 07-2027, 2010 WL 882990, *12 (S.D.N.Y. Mar. 4, 2010)(holding that there is no legal authority "that requires prosecutors to step into the shoes of prison officials and safeguard prisoners.") .  Courts have not extended the special relationship exception to include the relationship between prosecutor and prisoner.  Laughlin, 2011 WL 6000596, at *5 (holding there to be no special relationship between the ADA and the prisoner such that the ADA had a duty to safeguard the plaintiff from potential abuse related to his testimony); Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir. 1993)(holding that there was no special relationship between witness and ADA such that the ADA had an affirmative duty to provide the witness protection); Delrosario, 2010 WL 882990 (stating that a prosecutor has no affirmative duty to ensure the safety of a witness under the special relationship exception).

Second, under the "state-created danger" theory of liability, a plaintiff can allege a substantive due process violation under § 1983 by showing that the harm suffered at the hands of third parties was a direct result of state action.  Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996).  A state actor may be held liable under the state-created danger theory if the plaintiff can demonstrate that:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm

brought about by the state's actions, as opposed to a member
of the public in general; and (4) a state actor affirmatively
used his or her authority in a way that created a danger to the
citizen or that rendered the citizen more vulnerable to danger
than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006).  Importantly,

"liability under the state-created danger theory is predicated upon the states' *affirmative*

*acts* which work to the plaintiffs' detriments in terms of exposure to danger."  Id. at 282

(citing D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d

Cir. 1992)).

        In order for Mr. Talbert to demonstrate a successful claim for relief under § 1983,

he must allege that the DA Defendants, acting under the color of law, deprived him of a

right secured by the Constitution or the laws of the United States.  Mr. Talbert's amended

complaint alleges that the DA Defendants deprived him of the right to be placed in the

witness protection program and thus, to be protected from retaliation for the testimony he

gave against Mr. Hyland, Mr. Edge and Mr. Simmons.  Furthermore, Mr. Talbert alleges

that the DA Defendants deprived him of the equal protection of the law since another

witness who testified against Mr. Simmons was placed in the witness protection program

and Mr. Talbert was not.  The law is clear that unless Mr. Talbert can demonstrate that

either that a special relationship between himself and the DA Defendants existed or that

the potential harm suffered at the hands of third parties is a direct result of an action taken

by the DA Defendants, Mr. Talbert does not have a constitutional right to governmental

protection from private actors and therefore, his complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Courts have been clear that the special relationship exception is limited to "state actors who are responsible for the institutionalization of the plaintiff and the selection of the plaintiff's housing." Laughlin, 2011 WL 6000596, at *4; Snyder, 608 F.Supp.2d at 622-23 ("The special relationship theory places a burden upon state actors who maintain physical custody over a plaintiff.").  While courts have interpreted the special relationship exception to impose an affirmative duty to safeguard prisoners on prison officials who maintain a custodial relationship with prisoners, I find no reason why this affirmative duty should extend to prosecutors.  A prosecutor does not have physical custody over a detained witness nor is there any recognized duty for the prosecutors "to step into the shoes of prison officials and safeguard prisoners." Delrosario, 2010 WL 882990, at *12. Therefore, I find that no special relationship exists here such that the DA Defendants have a constitutional duty to protect Mr. Talbert and allow him access to the witness protection program.

Mr. Talbert may also demonstrate a constitutional right to government protection if he can meet the elements of the state-created danger theory.  Mr. Talbert's claim is that the DA Defendants had a duty to protect him and they breached that duty by failing to allow him access into the witness protection program.  The state-created danger theory requires Mr. Talbert to show that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to

danger than had the state not acted at all." <u>Kaucher v. County of Bucks</u>, 455 F.3d 418,

431 (3d Cir. 2006)(holding that in order to meet the state-created danger standard "[t]here

must be a direct causal relationship between the affirmative act of the state and plaintiff's

harm."). Mr. Talbert's complaint does not reveal an affirmative exercise of authority by

the DA Defendants, but rather alleges a failure of the DA Defendants to provide

protection. <u>Rodriquez v. City of Phila.</u>, 350 Fed.App'x 710, 713 (3d Cir. 2009) (stating

that "a plaintiff must show more than the government's 'failure to prevent' an injury in

order to prevail on a state-created danger claim.")(citations omitted). The allegations that

the DA Defendants failed to provide protection against retaliation by denying Mr. Talbert

access into the witness protection program is insufficient to meet the fourth essential

element of the state-created danger theory.

   Mr. Talbert has not demonstrated either that a special relationship exists between

the DA Defendants and himself, or that the DA Defendant took an affirmative action

which created a danger to him. Because neither the special relationship nor the state-

created danger exceptions apply in this case, I find that Mr. Talbert has no constitutional

right to government protection from harm at the hands of third parties. Accordingly, I

find that Mr. Talbert's § 1983 claim against the DA Defendants is dismissed with

prejudice.[4]

---

[4]     Mr. Talbert does not clarify whether he brings his claims against the DA Defendants in their official or individual capacities. I have addressed Mr. Talbert's claims against the DA Defendants in their official capacities above. To the extent that Mr. Talbert brings his claims against the DA Defendants in their individual capacities, I find that the DA Defendants are entitled to qualified immunity.
        "When a public official's actions give rise to a § 1983 claim, the privilege of qualified immunity can serve as a shield from civil suit in certain circumstances." <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006). Qualified immunity will only shield officials from § 1983 actions "insofar as their conduct does not violate clearly

### 2.      City of Philadelphia

Mr. Talbert does not have a constitutional right to governmental protection from harm at the hands of third parties and therefore his § 1983 claim against the City of Philadelphia is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  However, assuming *arguendo* that Mr. Talbert could demonstrate a constitutional right to governmental protection, his § 1983 claim against the City of Philadelphia would still fail as he has not alleged a plausible claim to relief.  Mr. Talbert pleads his § 1983 <u>Monell</u> claim against the City of Philadelphia by stating: "[t]he city' [sic] conduct and failure to establish or maintain a policy, practice or custom of monitoring, supervising and training the office, including defendants R. Seth Williams, Adam Jackson and Tami Levin contributed to and approximately caused the violation of plaintiffs [sic] rights under state and federal constitutions and laws of the Commonwealth of Pennsylvania and United States."  Pl.'s Am. Compl. ¶ 22.  Mr. Talbert provides no other factual allegations relating to the City, or any policy, practice or custom that caused the alleged deprivation of his constitutional rights.  The City of Philadelphia argues that Mr. Talbert's amended complaint fails to meet pleading standards because it lacks any actual facts that support a claim that there is a municipal policy or custom at issue and because Mr. Talbert has not

---

established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Therefore, in order to overcome the qualified immunity defense, a plaintiff must allege facts showing that the defendant's conduct violated a statutory or constitutional right and that the right was "clearly established" at the time of the challenged conduct.  <u>Bitner</u>, 455 F.3d at 190.

Mr. Talbert's amended complaint alleges a constitutional right to governmental protection from violence at the hands of third parties.  As I have discussed above, Mr. Talbert does not have a constitutional right to governmental protection from harm at the hands of third parties as his claim does not fall within the scope of the special relationship or the state-created danger exception.  Thus, Mr. Talbert has failed to make out a constitutional violation and the DA Defendants are entitled to qualified immunity to the extent that Mr. Talbert brings his claims against them in an individual capacity.

identified a specific policy maker involved in the formation of a custom or policy.  I

agree.  Mr. Talbert's claims against the City of Philadelphia cannot survive a motion to

dismiss based on the formulaic recitation of the elements of a § 1983 Monell claim.  See

Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do.").  Without further factual

enhancement, Mr. Talbert's allegation is simply a naked assertion that he suffered harm

at the hands of the City of Philadelphia which is not sufficient to state a plausible claim

for relief.  Therefore, even if Mr. Talbert was able to demonstrate a constitutional right to

governmental protection, I still find that Mr. Talbert's amended complaint is factually

insufficient and I grant the City of Philadelphia's motion to dismiss.

### B.   Section 1985 and Section  1986 Claims

Section 1985 provides a cause of action where two or more "persons" conspire to

interfere with an individual's civil rights.  42 U.S.C. § 1985.  To state a claim under

§1985, the plaintiff must allege:

> (1) a conspiracy; (2) that the conspiracy is motivated by racial
> or class based invidiously discriminatory animus; (3) the
> conspiracy deprived the plaintiff of the equal protection of the
> law; (4) that the conspirators committed some act in
> furtherance of the conspiracy; and (5) the plaintiff was injured
> in his person or property or deprived of a right or privilege as
> a United States Citizen.

Scott v. Township of Bristol, No. 90-1412, 1990 WL 178556, at *5 (E.D. Pa. Nov. 14, 1990).   Section 1986 "constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985 . . . ."[5]  42 U.S.C. § 1986.  A § 1986 plaintiff must demonstrate:

> (1) the defendant had actual knowledge of a § 1985
> conspiracy, (2) the defendant had the power to prevent or aid
> in preventing the commission of a § 1985 violation, (3) the
> defendant neglected or refused to prevent a § 1985
> conspiracy, and (4) a wrongful act was committed.

Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).  "Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also."  Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980).  To survive a 12(b)(6) motion to dismiss, "a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor."  DeJohn v. Temple University, No. 06-778, 2006 WL 2623274, at *5 (E.D. Pa. Sept. 11, 2006).

    The only allegation that Mr. Talbert makes in his amended complaint concerning a conspiracy is " [b]y conspiring as a whole to deprive plaintiff equal protection of the laws and of equal privileges to keep plaintiff safe; and by all defendants having knowledge of

---

[5] 42 U.S.C. § 1986 provides in relevant part:
> Every person who, having knowledge that any of the wrongs conspired to be
> done, and mentions in section 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be liable to
> the party injured, or his legal representative, for all damages caused by such
> wrongful act, which such person by reasonable diligence could have prevented;
> and such damages may be recovered in an action on the case. . . .

42 U.S.C. § 1986.

the wrongs conspired by the defendants and having power to prevent or cause prevention of the wrongs but neglected and refused to do, caused plaintiff physical and mental injuries . . ."  Given the discussion concerning Mr. Talbert's § 1983 claim, I believe that it is clear that Mr. Talbert has already failed the fifth prong for demonstrating a §1985 claim in that governmental protection from harm at the hands of third parties is not a right or privilege that Mr. Talbert is entitled to.  However, even assuming *arguendo* that it is a right or privilege that Mr. Talbert is entitled to, Mr. Talbert has failed to sufficiently allege his § 1985 action.  His broad allegation of conspiracy does not specifically refer to any unlawful agreement that the defendants entered into, the particular conduct that violated Mr. Talbert's rights or any racial or class based invidiously discriminatory animus.  Mr. Talbert's allegation does not provide sufficient facts to allow this Court to plausibly determine that the defendants formally agreed to violate his rights by denying him access to the witness protection program.  Accordingly, I dismiss Mr. Talbert's § 1985 claim and the dismissal of Mr. Talbert's §1985 claim necessarily requires dismissal of his §1986 claim.

## IV.    CONCLUSION

Mr. Talbert's amended complaint fails to establish a plausible claim for relief.  Mr. Talbert does not have a constitutional right to governmental protection from harm at the hands of third parties.  Furthermore, even if Mr. Talbert did have a constitutional right to governmental protection, Mr. Talbert has failed to provide sufficient factual allegations regarding any policy or practice that the City of Philadelphia employed which caused him

this injury and any conspiracy to violate his rights which the defendants entered into. Therefore, I grant both the City of Philadelphia's motion to dismiss and the DA Defendant's motion to dismiss.  Additionally, given the finding that Mr. Talbert does not have a constitutional right to governmental protection, I find that leave to amend would be futile.[6]  Accordingly, I find that Mr. Talbert's amended complaint naming the City of Philadelphia, District Attorney R. Seth Williams, Assistant District Attorney Tami Levin and Assistant District Attorney Adam Jackson is dismissed with prejudice.

An appropriate Order follows.

---

[6] "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). "An amendment is futile if the amended complaint cannot withstand a renewed motion to dismiss."  Harris v. Corbett, No. 12-01, 2014 WL 580150, *8 (W.D. Pa. Feb. 12, 2014)(citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).  Both pro se plaintiffs and plaintiffs represented by experienced counsel are subject to these principles. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).